GEORGE WHITSON and GRACE WHITSON, his wife, complainants-respondents,

*v.*

HATTIE H. ADAMS, defendant-appellant.

[Argued November 21st, 1921.   Decided March 6th, 1922.]

1. Where a lease for a term of years gives an option to the lessees to purchase the property in the event of the death of the lessor during the term, the lessees have a reasonable time within which to exercise the option of purchase. Any time before the expiration of the lease is a reasonable time within which to exercise the option.

2. Where in a lease the recital of the parties is so worded as to make it ambiguous as to whether the owner of the premises or her daughter and agent was intended to be lessor, it will be presumed that the lease was intended to be made between the parties capable of making it, and the lease will be under such circumstances so construed as to make the owner the lessor.

On appeal from a decree of the court of chancery.

*Messrs. Babcock & Champion* and *Messrs. Bourgeois & Coulomb,* for the appellant.

*Messrs. Bolte, Sooy & Gill,* for the respondents.

The opinion of the court was delivered by

KATZENBACH, J.

Laura B. Myers, a widow, owned a property in Atlantic City, known as No. 1 South Sovereign avenue. On September 25th, 1916, a lease of this property was made for a period of five years, from November 3d, 1916, to George Whitson and Grace Whitson, his wife. The lease reads that it is

"between Hattie H. Adams, of the city of Atlantic City. in the county of Atlantic and State of New Jersey, daughter and agent for Laura B. Myers, party of the first part; and George Whitson and Grace Whitson, his wife, of the aforesaid city, county and state, parties of the second part."

Mrs. Adams was the only child of Mrs. Myers, and if Mrs. Myers died intestate would, of course, be her heir-at-law. The lease was under seal and signed "Hattie H. Adams." The lease contained the following provision:

"It is further understood and agreed that in the event of the death of the said Laura B. Myers, mother of Hattie H. Adams, above mentioned, at any time during the continuance of this lease, the said party of the second part has the privilege and the first option to purchase said property for the sum of twelve thousand dollars; the sum of six thousand dollars to be paid in cash, and the balance, the sum of six thousand dollars, to be secured by a purchase-money mortgage for said sum, with interest thereon at the rate of six per cent. per annum, payable semi-annually, together with thirty-five hundred dollars fire insurance to accompany said mortgage."

In May, 1919, Mrs. Myers died intestate. Mrs. Adams survived her. The lessees had entered upon the property under the lease; paid the rent to Mrs. Myers, or the agent designated by her, and had made improvements upon the property. On November 5th, 1920, the lessees notified Mrs. Adams of their intention to exercise the option of purchase of the property given in the lease, and on the following day tendered to Mrs. Adams $6,000 in cash, a mortgage for $6,000 and fire insurance policies for $3,500 upon the property to accompany the mortgage. Mrs. Adams refused the tender. Mr. and Mrs. Whitson thereupon filed a bill in the court of chancery against Mrs. Adams for the specific performance of the option to purchase given in the lease. After a hearing specific performance was decreed. From this decree Mrs. Adams has appealed.

The defences interposed by Mrs. Adams were—*first,* that the agreement was not her personal and individual contract, and that there was no contract signed by the principal or her authorized agent, as required by the statute of frauds; *second,* that the terms and conditions of the mortgage to be given by the complainants were not sufficiently definite to warrant a decree of specific performance, and *third,* that the description of the property to be conveyed was too incomplete and uncertain to be the subject-matter of a decree for specific performance. At the hearing it was also urged that the complainants had not exercised their option of purchase within a reasonable time.

The second defence relating to the terms of the mortgage was eliminated by the offer of the complainants to pay the entire consideration in cash. The third defence was also removed from the case as the decree is for the conveyance of the land without the furniture which was leased with the property by the indenture of September 25th, 1916. With reference to the time within which the option to purchase could be exercised by the complainants, we think the construction placed upon the instrument by the learned vice-chancellor, namely, that the option gave to the complainants a reasonable time within which to exercise it, and that at any time before the expiration of the lease was a reasonable time, was correct. This leaves, then, for con-

sideration only the question as to whether or not Mrs. Adams is bound by the terms of the agreement. The vice-chancellor in his conclusions treats the lease as an agreement by Mrs. Adams by which she gives to the complainants an option to purchase the property from her in the event of her mother, Mrs. Myers, dying during the term of the lease intestate, and holds that the agreement was one that was obligatory upon Mrs. Adams and which she should be directed specifically to perform.

We are of the opinion that the decree below should be affirmed. We, however, construe the lease and option as not one given by Mrs. Adams but by Mrs. Myers, acting through her daughter, Mrs. Adams, as her agent. When the lease was made, Mrs. Myers was the owner of the property and the only one who could lease it or give an option for its purchase. Mrs. Adams had no title to the property. Even though her mother's death, intestate, during the term of the lease may have been anticipated by her, she could give no option to the complainants to purchase the property. No one is heir of a living person. It would be contrary to public policy to permit the enforcement of a contract for the sale of real estate made by one as the contemplated heir of the owner. It is true that the clause describing the parties to the lease, and hereinbefore quoted is somewhat ambiguous, as a cursory reading of it makes it doubtful as to whether Mrs. Adams or Mrs. Myers is intended as the party of the first part. But, as Mrs. Myers was the owner of the property and the only one who could lease it or give an option of purchase, it is to be presumed that the instrument was made between the parties capable of making it, rather than made by Mrs. Adams, who could neither at the time of the execution of the indenture lease the property or option it for purchase. The instrument is signed by Mrs. Adams, but as she is described therein as the "daughter and agent of Laura B. Myers," her signature is in effect that of her principal. This was Mrs. Adams' understanding of the capacity in which she signed the lease, as she says in her testimony, "I wasn't the owner when I made the contract, merely an agent."

In holding, as we do, that the lease is the lease of Mrs. Myers and was executed by Mrs. Adams as the agent of her mother, it

follows that the option to purchase therein contained is not within the statute of frauds, as contended by the appellant. The statute of frauds requires that some memorandum or note thereof be in writing, signed by the party to be charged therewith, or by some other person thereunto by him or her lawfully authorized. Mrs. Adams was lawfully authorized, according to her own testimony, to sign the lease containing the option. The authority of the agent does not have to be in writing under this section of the statute. *Milne* v. *Kleb, 44 N. J. Eq. 378.*

Mrs. Adams, after admitting she was acting as the agent of her mother in the execution of the lease, is in no position now either to deny her agency or set up that the contract is within the statute of frauds because not executed by the party to be bound thereby. She is the heir-at-law of the one for whom she admits she was acting. Contracts for the sale of land are enforceable against heirs-at-law and devisees. It is certainly not inequitable to decree specific performance against one who is the heir of the party making the contract and who was the one who as agent executed the contract for the ancestor and must certainly have been familiar with its terms.

The decree below is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH. WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, VAN BUSKIRK —14.

*For reversal*—None.